2019R00108/NKF

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Georgette Castner |
| | : | |
| | : | Crim. No. 23-**696** |
| v. | : | |
| | : | |
| | : | 18 U.S.C. § 1349 |
| KIRTAN S. PATEL | : | 18 U.S.C. § 1347 |
| CHRISTOPHER LUGO | : | 18 U.S.C. § 1035 |
| | | 18 U.S.C. § 2 |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Trenton, charges:

### COUNT 1
### (Conspiracy to Commit Health Care Fraud)

1. At all times relevant to this Indictment:

   a. Defendant KIRTAN S. PATEL ("PATEL") was a resident of the State of New Jersey and a manager and corporate officer of Pharmacy 1.

   b. Defendant CHRISTOPHER LUGO ("LUGO") was a pharmacy technician licensed to practice in New Jersey and a resident of the State of New Jersey.

   c. Pharmacy 1 was a pharmacy located in Jersey City, New Jersey.

   d. Employee 1 was an employee of Pharmacy 1.

   e. Employee 2 was an employee of Pharmacy 1.

   f. Doctor 1 was a medical provider licensed by the State of New Jersey with a practice located in New Jersey.

**RECEIVED**
AUG 3 1 2023
12:40pm
AT 8:30 _____ M
CLERK, U.S. DISTRICT COURT - DNJ

g. Doctor 2 was a medical provider licensed by the State of New Jersey with a practice located in New Jersey.

h. Doctor 3 was a medical provider licensed by the State of New Jersey with a practice located in New Jersey.

**The Medicare Program**

2. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

3. Medicare was divided into four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

4. Medicare Part D provided prescription drug coverage to persons who were eligible for Medicare. Medicare beneficiaries obtained Part D benefits in two ways: (a) by joining a Prescription Drug Plan, which covered only prescription drugs; or (b) by joining a Medicare Advantage Plan, which covered both prescription drugs and medical services (collectively, "Medicare Part D Plans"). These Medicare Part D Plans were operated by private companies, often referred to as drug plan "sponsors," that were approved by Medicare.

5. Medicare and each of the Medicare Part D Plans were a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

6. In order for pharmacies to submit claims to, and to be appropriately reimbursed by Medicare Part D Plans for providing beneficiaries with prescription drugs, those items needed to be, *inter alia*: (a) prescribed and ordered by a licensed medical provider; (b) medically reasonable and necessary; (c) dispensed as represented; and (d) not induced by kickbacks or bribes.

### Private Health Care Benefit Programs

7. Various private entities provided health insurance plans, affecting commerce, under which medical benefits, items, and services were provided to individuals, including plans that provided coverage for prescription drugs (the "Private Plans"). Individuals who received benefits under the Private Plans were referred to as "members."

8. Each of the Private Plans was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

9. As with Medicare Part D Plans, Private Plans, in order to reimburse pharmacies, directly or indirectly, for dispensed drugs, generally required the dispensed drugs to be: (a) prescribed and ordered by a licensed medical provider; (b) medically reasonable and necessary; and (c) actually dispensed as represented.

### Claims Processing

10. Typically, after filling a beneficiary or member's prescription, a pharmacy submitted a claim for reimbursement to the beneficiary or member's insurer. In submitting a claim for reimbursement, a pharmacy was required to provide, among other things, the beneficiary or member's personal information, the identification number of the medical professional who ordered the prescription, and the pharmacy's identification number, such as National Provider Identifier ("NPI")

3

number, with the claim. Medicare Part D Plans and Private Plans determined whether a pharmacy was entitled to payment for each claim.

### Drugs

11. Creon (pancrelipase) was a brand-name prescription drug indicated for the treatment of exocrine pancreatic insufficiency due to cystic fibrosis or other conditions.

12. Duexis (ibuprofen and famotidine) was a brand-name prescription drug indicated for the relief of signs and symptoms of rheumatoid arthritis and osteoarthritis and to decrease the risk of developing gastrointestinal ulcers.

13. Glumetza (metformin hydrochloride) was a brand-name prescription drug used in the management of type 2 diabetes.

14. Pennsaid (diclofenac sodium) was a brand-name prescription drug used for the treatment of the signs and symptoms of osteoarthritis of the knees.

15. Victoza (liraglutide) was a brand-name prescription drug used by individuals with type 2 diabetes to improve glycemic control and reduce the risk of major adverse cardiovascular events.

### The Conspiracy

16. From in or about June 2019 through in or about March 2022, in the District of New Jersey and elsewhere, defendants

**KIRTAN S. PATEL and
CHRISTOPHER LUGO**

did knowingly and intentionally conspire and agree with each other, and others known and unknown, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs, as defined by 18 U.S.C. § 24(b), namely,

Medicare Part D Plans and Private Plans, and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of or payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

### Goal of the Conspiracy

17.  It was the goal of the conspiracy for PATEL, LUGO, and others to: (a) unlawfully enrich themselves by submitting and causing the submission of fraudulent claims to health care benefit programs for expensive drugs on behalf of themselves and others in order to generate lucrative reimbursements for Pharmacy 1; (b) conceal truthful and accurate information from Medicare Part D Plans and Private Plans to which such claims were submitted, and the receipt and transfer of the proceeds from the fraud; and (c) use the proceeds of the fraud for the personal use and benefit of PATEL and LUGO, their co-conspirators, and to further the fraud.

### Manner and Means of the Conspiracy

18.  The manner and means by which PATEL, LUGO, and their co-conspirators sought to accomplish the goal of the conspiracy included, among other things, the following:

    a.  Pharmacy 1 submitted claims to Medicare Part D Plans and Private Plans for expensive, brand-name drugs on behalf of persons employed by and associated with Pharmacy 1, including PATEL, LUGO, and others, that were: (i) not prescribed and ordered by a licensed medical provider; (ii) not medically reasonable and necessary; and (iii) not dispensed as represented.

b. PATEL and LUGO sent, and caused to be sent, the names of beneficiaries and members to Doctor 1 and Doctor 2 so that Doctor 1 and Doctor 2 would issue medically unnecessary electronic prescriptions for Glumetza and other expensive, brand-name prescription drugs to those beneficiaries and members, and direct those beneficiaries and members to fill such prescriptions at Pharmacy 1, resulting in Pharmacy 1 submitting claims to Medicare Part D Plans and Private Plans.

c. PATEL and LUGO prepared, and caused to be prepared, false and fraudulent prior authorizations for beneficiaries and members to induce health care benefit programs to pay for claims for drugs that were not medically reasonable and necessary.

d. PATEL and LUGO prepared, caused to be prepared, and sent false and fraudulent statements to health care benefit programs in response to requests for information.

e. From in or around June 2019 to in or around March 2022, PATEL and LUGO, through Pharmacy 1, caused the submission of false and fraudulent claims to the Private Plans for prescription medications for employees and associates of Pharmacy 1 that were: (i) not prescribed and ordered by a licensed medical provider; (ii) not medically reasonable and necessary; and (iii) not dispensed as represented. The Private Plans paid at least $500,000 for these claims.

In violation of Title 18, United States Code, Section 1349.

6

## COUNTS 2 – 8
### Health Care Fraud

19. Paragraphs 1 through 15 and 17 through 18 of this Indictment are realleged here.

20. On or about the dates set forth below, in the District of New Jersey and elsewhere, the defendants specified per count below, in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs, as defined in 18 U.S.C. § 24(b), namely the Private Plans, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of, said health care benefit programs, by submitting and causing the submission of false and fraudulent claims for items and services that were: (a) not prescribed and ordered by a licensed medical provider; (b) not medically reasonable and necessary; and (c) not dispensed as represented:

| Count | Defendant | Prescriber Name | Approx. Claim Date | Drug | Claim Number | Approx. Amount Paid |
|---|---|---|---|---|---|---|
| 2 | LUGO | Doctor 3 | 1/2/2020 | Creon | 200023440768024 | $6,464 |
| 3 | LUGO | Doctor 3 | 1/2/2020 | Duexis | 200022833990022 | $3,207 |
| 4 | LUGO | Doctor 3 | 1/2/2020 | Pennsaid | 200022833979022 | $6,671 |
| 5 | LUGO | Doctor 3 | 1/2/2020 | Victoza | 200023440646033 | $2,315 |
| 6 | PATEL | Doctor 1 | 1/10/2020 | Victoza | 200104937791002 | $1,543 |
| 7 | PATEL | Doctor 1 | 2/1/2020 | Pennsaid | 200325320051040 | $2,478 |
| 8 | PATEL | Doctor 1 | 2/1/2020 | Creon | 200325320576002 | $4,268 |

7

Each in violation of Title 18, United States Code, Section 1347 and Section 2.

## COUNTS 9 – 11
**False Statements Relating to Health Care Matters**

21. Paragraphs 1 through 15 and 17 through 18 of this Indictment are realleged here.

22. PATEL prepared, caused to be prepared, and sent false and fraudulent statements to a health care benefit program in response to a request for information dated October 15, 2020, in which PATEL falsely and fraudulently stated and represented that: (a) certain members had been issued certain prescriptions by prescribers; (b) Pharmacy 1 dispensed certain prescriptions to certain members; and (c) Pharmacy 1 had collected co-pays from certain members.

23. On or about November 4, 2020, in the District of New Jersey and elsewhere, defendant

**KIRTAN S. PATEL,**

in a matter involving a health care benefit program, did knowingly and willfully: (a) falsify, conceal, and cover up by trick, scheme, and device material facts; and (b) make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, set forth below, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services:

9

| Count | Member | False Writing/Document |
|---|---|---|
| 9 | LUGO | Document containing prescriptions, prescription pick up records, and patient co-pay consent letter pertaining to LUGO |
| 10 | Employee 1 | Document containing prescriptions, prescription pick up records, and patient co-pay consent letter pertaining to Employee 1 |
| 11 | Employee 2 | Document containing prescriptions, prescription pick up records, and patient co-pay consent letter pertaining to Employee 2 |

Each in violation of Title 18, United States Code, Section 1035 and Section 2.

## FORFEITURE ALLEGATION

Upon conviction of an offense alleged in this Indictment, defendants

**KIRTAN S. PATEL** and **CHRISTOPHER LUGO**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all property, real and personal, that constitutes or is derived from any proceeds traceable to the commission of the offense alleged, representing all property constituting or derived from proceeds traceable to the commission of the offense.

### Substitute Assets Provision

If any of the property described above, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

A True Bill,

███████████████████████

Foreperson

*Philip R. Sellinger/by LMC*

PHILIP R. SELLINGER
United States Attorney

GLENN S. LEON
Chief
Criminal Division, Fraud Section

NICHOLAS K. PEONE
PAUL J. KOOB
Trial Attorneys
Criminal Division, Fraud Section

CASE NUMBER:  3:23-CR-696 (GC)

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

v.

**KIRTAN S. PATEL and CHRISTOPHER LUGO**

## INDICTMENT FOR

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 1035
18 U.S.C. § 2

A true bill,

███████████████████████

**Foreperson**

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

NICHOLAS K. PEONE
PAUL J. KOOB
TRIAL ATTORNEYS
(202) 923-7818